IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:02-00181 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| KEVIN R. JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This action is before the Court upon the United States Probation Officer's ("USPO") request to modify the Defendant's conditions of release to impose a total alcohol ban. The Probation Officer cites that the Defendant's participation in Centerstone's program for alcohol abuse that requires total abstinence. The Probation Officer also cites Plaintiff's prior convictions in 1993 and 1996 for driving under the influence of alcohol. At a hearing on the proposed modification, the USPO testified that on two occasions, the USPO detected alcohol on the Defendant's breath. The first test occurred at the Defendant's residence just after he had driven home. The defendant's alcohol level was .03 on that occasion. The second test was at the Defendant's residence during a social event at his residence with a few friends and the Defendant's alcohol level was above .08.

The Defendant objected to this proposal and insisted that only a ban on excessive use of alcohol should be imposed. The Court notes that at the time of sentencing, the presentence report did not recommend any alcohol ban and the Court did not impose any alcohol ban as a condition of supervised release. The Court reserved ruling on the modification, and in the interim required the Defendant's wife to drive him when he needed to travel

In a subsequent report, after the initial hearing on this request, the USPO reported that the Defendant "bragged" about his ability to drink alcohol and admitted that he was an alcoholic. A hearing was held on this report and the Defendant denied any bragging, but admitted that he was joking in response to a question from Dr. Russo about what happened at his last Court hearing. Defendant asserts that the Centerstone program assists him in moderating his drinking and that he has stopped drinking. The Defendant expressed his personal belief that as a free person, he should be able to drink at his home. Defendant has drunk three to four beers during the evening at his residence on a weekend. Dr. Russo testified that he made the statements attributed to him in the USPO's report, but also testified that Defendant was not "glorified" in his statement. The Defendant regularly attends and participates in the Centerstone's program, but responds only when questioned. Dr. Russo doubts the Defendant's statement about his cessation of drinking. Although not mentioned in the USPO's report, Dr. Russo testified that if the Defendant is permitted to drink, then Centerstone would have to alter the type of counseling provided the Defendant.

Under 18 U.S.C. § 3563(b) (7), the Court can require as a condition of supervised release that a defendant "refrain from excessive use of alcohol." Under 18 U.S.C. § 3583(b)(2) the Court can impose any other condition that "involves no greater deprivation of liberty than is necessary for the purposes set forth in" Section 3553(a)(2)(B)(C) and (D).[1] Conditions of supervised release have been described as the "invisible punishments" that infringe on a

---

[1] 18 U.S.C. §§ 3553(a)(2)(B)(C) and (D) provide as follows: "to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner...."

2

defendant's liberty after release from custody. Wendy Heller, "Poverty, the Most Challenging Condition of Prisoner Release," 13 Geo. J. on Poverty L. & Pol'y, 219, 223 (2006) (hereinafter "Heller") (2006) (quoting Jeremy Travis, President of John Jay College of Criminal Justice, See Jeremy Travis, INVISIBLE PUNISHMENT: THE COLLATERAL CONSEQUENCES OF MASS IMPRISONMENT 15-16 (Mare Mauer & Media Chesney-Lind eds., 2002)).

Courts have imposed a total ban on the Defendant's use of alcohol only where the Defendant's alcohol use is tied to the underlying crime, United States v. Thurlow, 44 F.3d 46, 47 (1st Cir. 1995), or the evidence establishes such a ban is necessary and reasonably related to the defendant's rehabilitation, United States v. Schave, 186 F.3d 839, 841-42 (7th Cir. 2002) (prior diagnosis of alcoholism) or to protect the Defendant's family from abuse, United States v. Cooper, 171 F.3d 582, 586-87 (8th Cir. 1999) or to protect the public. United States v. Modena, 302 F.3d 626, 636-37 (6th Cir. 2002). See also United States v. McKissack, 428 F.3d 719, 723 (7th Cir. 2005). In this Circuit, imposition of an alcohol ban without information of the Defendant's abuse or use of alcohol is an abuse of discretion. Modena, 302 F.3d at 636. A defendant's use of alcohol on weekends and smoking marijuana was held insufficient to justify a total alcohol ban absent proof that the defendant "abuse[d] alcohol." United States v. Bass, 121 F.3d 1218, 1223-24 (8th Cir. 1997). In United States v. Scherrer, 444 F.3d 91, 95-96 (1st Cir. 2006), the First Circuit struck a total alcohol ban during treatment for drug and alcohol abuse.

Here, there is not any proof that alcohol was a factor in or tied to the Defendant's crime giving rise to his conviction. The Defendant's presentence report reflects that the Defendant had been treated for alcohol abuse in the early 1990s, but thereafter had a history of cocaine and marijuana use. According to the presentence report, at the time of sentencing, the Defendant no

3

longer had the urge to drink alcohol. As noted earlier, the then USPO did not recommend a total alcohol ban. As a condition of supervised release the Court imposed drug testing and substance abuse treatment with 30 days inpatient treatment followed by 90 days in a community correction center. The Defendant is employed and has maintained steady employment for more than a year since his release from custody. There is not any evidence that the Defendant has been stopped or arrested for DUI since his release from custody. After the Defendant's release from custody, Centerstone's evaluation of the Defendant did not reveal any emotional or psychological condition that could be aggravated by any alcohol use. There is not any proof that Defendant's alcohol use has caused him to abuse any member of his family. The Defendant's DUI convictions are at least 13 years old. At sentencing, neither the USPO nor the Court deemed those convictions to warrant a total alcohol ban. The time limits for substance abuse treatment for his marijuana and cocaine use under the Court's judgment have expired.

As to the USPO's first alcohol test, the Defendant had just arrived as his residence and was well below the legal standard in Tennessee for DUI with his alcohol level of .03. See Tenn. Code Ann. §55-10-401(a)(1) (illegal alcohol concentration of .08%). As to the second test, the Defendant exceeded .08, but was at his residence during a social occasion with friends. The Court is gravely concerned that the reported bragging incident was contrived. In a word, the Court finds that given his daily activities, the evidence here does not show the Defendant abused alcohol or is an alcoholic. See L. David Blevins, et al., "Using the Michigan Alcoholism Screening Test to Identify Problem Drinkers under Federal Supervision," 60 JUN Fed. Prob. 38, 39 (1996) (quotation omitted).

The Court concludes that the facts here do not justify a total alcohol ban, which is a more

4

stringent condition than set by Congress in 18 U.S.C. § 3563(b)(7). The requirement against excessive use of alcohol, as defined by the level that qualifies under Tennessee's DUI law, as a condition of the Defendant's supervised release can accomplish the desired effect. A "study found that alcoholic patients limited their driving when they were informed that consumption beyond a certain limit would result in removal from their pleasant environment." Sam Torres, "Should Corrections Treat or Pursue Substance Abusing Criminals" 60 SEP Fed. probation 18, 21 (1996) (hereinafter Torres") (citing Bigelow, W & Liebson, "Cost Factors Controlling Alcoholic Drinking" Psychological Reports, 28, 575-580 (1971)). Neither the Court nor Dr. Russo considers the Defendant's continued participation in his assigned Centerstone program requiring total abstinence to be mandatory.

As to Centerstone's requirements for the Defendant's assigned treatment program, the Court will not allow USPO's contract with Centerstone or Centerstone's policies to determine conditions of release. Congress intended that "supervised release fulfill[] rehabilitative ends . . . The Senate Report was quite explicit about this, stating that the goal of supervised release is 'to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period for punishment or other purposes but still needs supervision and training programs after release' . . . Supervised release departed from the parole system it replaced by <u>giving district courts the freedom to provide postrelease supervision for those, and only those, who needed it</u>." Johnson v. United States, 529 U.S. 694, 709 (2000) (quoting S. Rep. No. 98-225, p. 124 (1983)) (emphasis added). Moreover, as was observed in Traynor v. Turnage, 485 U.S. 535, 564 n. 5 (1988), "[t]he American Medical Association and the American Psychiatric Association and the

5

National Council on Alcoholism emphasize ... that the primary/secondary distinction [in alcoholism] is a crude one. A diagnosis of alcoholism as primary or secondary may depend on much on the nature of the facility in which the diagnoses is made as it does on the alcoholic's clinical history." (Blackmun J. concurring in part and dissenting in part).

The Court also notes that alternatives exist for alcohol treatment, including at the Centerstone program in which the Defendant is enrolled, as "no one particular model of treatment has proven completely effective in curing alcoholism and drug addiction." D. Grangetto "Reducing Recidivism by Substance Abusers Who Commit Drug and Alcohol Related Crimes," 10. J. Contemp. Legal Issues 383, 388 (1999). "[I]mmunotherapies may play a significant role in both the prevention and treatment of addiction" and "pharmaceutical agents also 'provide [] the addicted individual with the skills necessary to prevent relapse.'" See e.g., M. Susan Ridley and Martin Y. Iquchi, "Cocaine Use of Vaccines Against Drug Addiction: Is it Permissible and Is It Good Public Policy," 12 Va. J. Soc. Pol'y. & L. 260, 269 (2004). Given the lack of clarity of Centerstone's other programs that do not require total abstinence, the Court will allow the Defendant to be evaluated for that program, but only for 90 days.

Given the circumstances of this action, the Court deems a reminder of the probation officer's duties, as an agent of the Court. From a historical perspective, the 1910 legislation establishing parole (now probation) stated that: "the parole officer's job was to assist parole applicant in obtaining employment and supervise parolees after releases." Heller at 222 (quoting Peter B. Hoffman, U.S. Dept. of Justice, History of the Federal Parole System at 7 (2004)). In 1966, the Bureau of Prisons and Federal Parole Board had a job placement program and in 1986 BOP and the National Institute of Justice operated a job program in which a defendant subject to

imminent release or on work release or parole would perform community work for public and non-profit organizations that led to defendants' securing jobs, a critical success factor for successful supervision. Id. at 222-23. This program had "extremely positive results", but was later dropped by BOP due to the demands of overcrowding on BOP staff. Id. at 223.

Congress and the Supreme Court have spoken to the proper functions of probation officers. Congress has defined the principal duties of probation officers "to aid" in the rehabilitation of the defendant. 18 U.S.C. § 3603(3). See also 18 U.S.C. §§ 3603(2)(4) and (8). To be sure, the probation officer must keep informed as to the defendant's compliance with his or her conditions of release, but the probation officer is directed to report any observation of a violation of a defendant's condition of release to the district court and the federal prosecutor. 18 U.S.C. § S 3603(8)(B)(3).

As the Supreme Court stated, "Our first point of reference is the character of probation or parole . . . '[T]he purpose is to help individual reintegrate into society as constructive individuals as soon as they are able'. The duty and attitude of the probation or parole officer reflect this purpose. . . .While the parole or probation officer recognizes his double duty to the welfare of his clients and to the safety of the general community, by and large concern for the client dominates his professional attitude. The parole agent ordinarily defines his role as representing his client's best interests as long as these do not constitute a threat to public safety." Gagnon v. Scarpelli, 411 U.S. 778, 783-845 (1973) (quoting Morrissey v. Vrewer, 408 U.S. 471, 477 (1972) and F. Remington et al. Criminal Justice Administration, Materials and Cases (1969)). The Supreme Court also stated , "[b]ecause the probation officer or parole officer's function is not so much to compel conformance to a strict code of behavior as to supervise a course of rehabilitation, he has

7

been entrusted traditionally with broad discretion to judge the progress of rehabilitation in individual cases, and has been armed with the power to recommend or even to declare revocation." Gagnon, 411 U.S. at 784. "'Revocation ... is, if anything, commonly treated as a failure of supervision." Id. at 785 (quoting Remington at 7, n.10)

To be sure, contemporary commentators have observed that "parole supervision [unfortunately] has shifted away from providing services to parolees and more toward providing surveillance activities such as drug testing, monitoring curfew and collecting restitution. As a result, many probation and parole officers do not now help offenders overcome the overwhelming obstacles to getting a job." Heller at 244 (quoting Joan Pertersilia "When Prisoners Come Home: Parole and Prisoner Reentry" 88 (2003)). Federal probation officers acknowledge a philosophical difference in how they approach the performance of their duties. The two basic categories are the "uncompromising approach" or "law enforcement" and the "therapeutic agent" or "social worker - medical approach". Torres at 48, 49. Other variations are the "time server" and "synthetic officer" approach. Id. Of the two major types, the law enforcement or "cop" approach is "more inclined to violate or recommend revocation for probation violation." Id. at 48. The "therapeutic agent" or "social worker - medical approach...stresses casework and treatment." Id. In the Court's view, the statutory duty to aid in rehabilitation and the legislative history on supervised release promote rehabilitation as the probation officer's core duty.

In this connection, Heller also noted that "[a] majority of those returning to prison for violating a condition of release do so not as a result of committing a new crime, but as a result of violating one of the many technical conditions." Heller at 219, 238 (citing Norman Holt, The

8

Current State of Parole in America, COMMUNITY CORRECTIONS; PROBATION, PAROLE, AND INTERMEDIATE SANCTIONS" 35 (1998)). Heller reports that "conditions [of supervised release] are currently structured and enforced in a way that sets offenders to fail," Heller at 221, and "[i]f conditions of release impose so many additional rules that offenders feel trapped in such debt to society that may never regain their full freedom they will have little incentive to comply." Id. at 225.

As applied here, the Court is concerned, as defense counsel argues, that the USPO is setting up this Defendant to fail. Given that the Defendant was enrolled in a Centerstone program with conditions that he cannot meet, then to compel him to attend that program imposes upon the Defendant a condition of supervised release doomed for failure.

The USPO's request for a total alcohol ban should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the ___12th___ day of November, 2009.

WILLIAM J. HAYNES, JR
United States District Judge

9

Case 3:02-cr-00181    Document 211    Filed 11/12/09    Page 9 of 9 PageID #: 75